**EMERGENCY MOTION**

No. 20-5203

# In the United States Court of Appeals
## for the District of Columbia Circuit

————————

Cletus Woodrow Bohon; Wendell Flora; Robert Matthew Hamm; Beverly Ann Bohon; Mary Flora; Aimee Chase Hamm,
*Plaintiffs-Appellants*
v.
Federal Energy Regulatory Commission; Willie Phillips, In his official capacity as Chairman of the Federal Energy Regulatory Commission; Mountain Valley Pipeline, LLC,
*Defendants-Appellees*

**On Remand from the United States Supreme Court, No. 22-256;
On Appeal from the United States District Court
No. 1:20-cv-00006-JEB**

————————

**EMERGENCY MOTION FOR INJUNCTIVE RELIEF TO HALT
IRREPARABLE INJURY PENDING REVIEW OF CONGRESS'S OVERLY
BROAD DELEGATION OF LEGISLATIVE POWER IN THE NGA AND
SECTION 324 OF THE DEBT BILL**

————————

MIA YUGO (D.C. Cir. Bar. No. 62808)
*Counsel of Record*
CHRISTOPHER E. COLLINS
YUGO COLLINS, PLLC
25 Franklin Rd. SW
Roanoke, VA 24011
Main: (540) 861-1529
mia@yugocollins.com
chris@yugocollins.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................... 2

BACKGROUND ............................................................................. 3

STANDARD OF REVIEW ................................................................. 5

ARGUMENT ................................................................................. 6

I.  LANDOWNERS ARE LIKELY TO PREVAIL ON THE MERITS ............... 6

    A. The United States Supreme Court has repeatedly confirmed district courts retain jurisdiction over separation of powers challenges to agency authority ............................................................................ 6

    B. Landowners are likely to succeed on all issues associated with Section 324 ..................................................................................... 8

    C. Landowners are likely to succeed on the underlying merits of the Non-Delegation Doctrine challenges raised in Counts I-III of the Complaint ..... 10

        1. Counts I & II: The federal Non-Delegation Doctrine prohibits overly broad delegations of legislative power to agencies like FERC ............... 10

            a. The separation of powers doctrine applies equally to all agencies ...... 11

            b. The Non-Delegation Doctrine reins in federal agencies like FERC who unlawfully exercise unfettered discretion to seize private land at will ............................................................................... 13

            c. The Non-Delegation Doctrine ensures political accountability when private land is seized from its owners against their will ................... 15

        2. Count III: The private Non-Delegation Doctrine prohibits the delegation of eminent domain power to a private entity ........................ 17

II. THE OTHER FACTORS STRONGLY FAVOR LANDOWNERS ............... 18

A. Landowners will suffer irreparable harm in the absence of injunctive relief ................................................................................................... 18

B. The balance of equities tips in favor of Landowners and against Appellees who are intentionally stalling adjudication of the merits of this case .......... 20

C. Injunctive relief pending review of serious constitutional questions is in the public interest .......................................................................... 21

CERTIFICATE OF SERVICE ............................................................... 24

CERTIFICATE OF COMPLIANCE ........................................................ 25

# TABLE OF AUTHORITIES

## Cases

*A.L.A. Schechter Poultry Corp. v. United States*,
   295 U.S. 495 (1935) ...................................................... 2, 11, 12, 14, 15

*Am. Lung Ass'n v. EPA*,
   985 F.3d 914 (2021) ................................................................... 13, 14

*Axon Enter. v. FTC*,
   143 S. Ct. 890 (2023) ............................................................. 3, 4, 6, 7

*Blue Ridge Poultry & Egg Co. v. Clark*,
   211 Va. 139 (1970) ............................................................................ 18

*Carr v. Saul*,
   593 U.S. __, 141 S. Ct. 1352, 209 L. Ed. 2d 376 (2021) ...................... 7

*Dept. of Transp. v. Association of American Railroads*,
   575 U.S. 43 (2015) ................................................................. 11, 16, 17

*Gundy v. United States*,
   139 S. Ct. 2116 (2019) .......................................................... 11, 14, 15

*Hamilton Watch Co. v. Benrus Watch Co.*,
   206 F.2d 738 (2d Cir. 1953) ................................................................ 6

*Kelo v. City of New London*,
   545 U.S. 469 (2005) ......................................................................... 12

*Levisa Coal Co. v. Consolidation Coal Co.*,
   276 Va. 44, 62 (2008) ....................................................................... 18

*Loper Bright Enters. v. Raimondo*,
   143 S. Ct. 2429 (May 1, 2023) ..................................................... 10, 11

*Marbury v. Madison*,
   5 U.S. 137 (1803) ............................................................................. 10

*Marshall Field & Co. v. Clark*,
    143 U.S. 649 (1892) ................................................................. 14

*Monument Realty LLC v. Wash. Metro. Area Transit Auth.*,
    540 F. Supp. 2d 66 (D.D.C. 2008) ....................................... 19

*National Federation of Independent Business v. OSHA*,
    142 S. Ct. 661 (2022) ................................................... 15, 16, 17

*Patchak v. Zinke*,
    138 S. Ct. 897 (2018) ............................................................. 9

*Patriot-BSP City Ctr. II v. U.S. Bank Nat'l Ass'n*,
    715 F. Supp. 2d 91 (D.D.C. 2010) ....................................... 19

*PennEast Pipeline Co. v. New Jersey*,
    141 S. Ct. 2244 (2021) ................................................... 3, 6, 17

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ............................................................... 11

*Peterson v. District of Columbia Lottery & Charitable Control Bd.*,
    1994 U.S. Dist. LEXIS 10309 (D.D.C. 1994) ..................... 19

*Relentless, Inc. v. Department of Commerce*,
    62 F.4th 621 (1st Cir. 2023) (Sup. Ct. No. 22-1219) .......... 10

*S. Utah Wilderness Alliance v. Allred*,
    2009 U.S. Dist. LEXIS 30664 (D.D.C. 2009) ..................... 19

*United Church of the Medical Ctr. v. Medical Ctr. Comm'n*,
    689 F.2d 693 (7th Cir. 1982) ................................................ 19

*United States v. Klein*,
    80 U.S. 128 (1871) ................................................................. 9

*Util. Air Regulatory Group v. EPA*,
    573 U.S. 302 (2014) ............................................................. 13

*Wash. Metro. Area, Etc. v. Holiday Tours*,
  559 F.2d 841 (D.C. Cir. 1977) ................................................................ 5

*West Virginia v. Environmental Protection Agency*,
  142 S. Ct. 2587 (2022) ................................................................ 11, 13

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008) ................................................................ 5

**Constitutional Provisions and Statutes**

U.S. Const. Art. I ................................................................ 9

U.S. Const. Art. II ................................................................ 9

U.S. Const. Art. III ................................................................ 9

VA Const. Art. 1, s. 11 ................................................................ 12

FRA § 324 ................................................................ 4, 7, 8, 9, 16

**Rules**

Fed. R. App. P. 8 ................................................................ 1

Fed. R. App. P. 27 ................................................................ 1

**Other Authorities**

I William Blackstone, Commentaries on the Laws of England ................................................................ 18

161 FERC ¶ 61,043 (2017) ................................................................ 7

Landowners move for an emergency injunction to halt irreparable harm pursuant to Federal Rules of Appellate Procedure 8 and 27 by temporarily enjoining FERC and MVP from exercising *Congress's* legislative powers, including the power of eminent domain, pending review of the constitutional issues presented here. Despite the U.S. Supreme Court remanding this case *six months ago*, Landowners continue to suffer irreparable injury as FERC and MVP engage in stall tactics to delay adjudication of this Non-Delegation Doctrine case. Since remand, this Court has granted four extensions to FERC and MVP over Landowners' objections. Emergency relief is warranted for a period commensurate to the duration of the delays. Relief is requested as soon as possible, but no later than **October 24, 2023**, as irreparable injury escalates daily. Bulldozers are on the property. Smoke can be seen rising over the land. Pursuant to controlling Supreme Court precedent, Landowners have a strong likelihood of success on the merits. With each delay, Landowners suffer irreparable injury to <u>private</u> land being seized for <u>private</u> gain.

Landowners have consulted with FERC and MVP. The Commission likely opposes the request for injunctive relief but wishes to review the filing first. MVP opposes injunctive relief.

Ironically, in its July 14, 2023, Emergency Application to the U.S. Supreme Court on the environmental permitting cases, MVP pleaded with the High Court that it "**should not reward petitioners for their brazen strategy of delay and**

1

**gamesmanship**."[1] Yet, that is precisely what FERC and MVP are doing here: manipulating the judicial process so that this Non-Delegation Doctrine case is not heard until *after* the land is irreparably damaged. FERC and MVP should not be rewarded for this "brazen gamesmanship," as MVP calls it. The law should be applied <u>equally</u> to poor and powerful litigants, especially when private land is at stake.

## INTRODUCTION

Eminent domain abuse in America has run rampant. Federal agencies like FERC—detached from rural America—dictate the seizure and transfer of *private* land to wealthier *private* parties under the guise of "economic development." But *who* decides what land gets condemned? Not Congress. Congress creates rogue agencies like FERC and gives them a blank check to decide when eminent domain power can be used to seize private property from Cletus and transfer it to MVP, a *for-profit* private entity. Like the overly broad delegation in *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), this delegation is unrestricted.

Unelected Washington bureaucrats have no constitutional authority to exercise unlimited power to seize private land from Peter and give it to Paul. If Congress wants Paul to have the land, Congress must vote to take it and explain that

---

[1] MVP's Emergency Application to Chief Justice Roberts to Vacate the Stays at 27 (July 14, 2023).

vote to Peter when its members run for re-election. That is the system of accountability the Constitution demands.[2]

The Supreme Court has already reined in the EPA and OSHA when exercising unconstitutional powers. *Principled* jurisprudence requires these principles to be applied equally to all federal agencies. Turning a blind eye to FERC's use of unconstitutional power to facilitate construction of a pipeline flouts the rule of law.

## BACKGROUND

This Non-Delegation Doctrine case was filed on **January 2, 2020**. *Nearly four years later*, Landowners are *still* waiting for their day in court. In May 2020, the district court dismissed the case—without reaching the merits—citing lack of jurisdiction. Landowners appealed. At FERC's request, this Court held the case in abeyance for many months pending the U.S. Supreme Court's decision in *PennEast*. A year and a half later, on December 15, 2021, the parties argued the issue of jurisdiction before this Court. Six months later, on June 21, 2022, despite the Supreme Court's favorable jurisdictional holding in *PennEast*, the Court issued a short decision affirming dismissal.

---

[2] The popularity of *Yellowstone* illustrates that America is fascinated with eminent domain. *See* S3, Ep. 3 ("Lynelle: That's a seven-generation ranch. He'll never sell. Ellis: Then you'll invoke eminent domain . . . That's progress, governor, and progress has a price."). That "price" is freedom. And it is only "progress" if you believe government should be able to confiscate citizens' property and transfer it to parties it deems most worthy.

3

Landowners appealed to the United States Supreme Court, which held the case pending the decision in *Axon* and *Cochran*, two similar separation of powers cases. On April 14, 2023, the Supreme Court issued a <u>unanimous</u> 9-0 decision upholding Landowners' position on jurisdiction. On April 24, 2023, the Supreme Court granted certiorari, vacated this Court's ruling, and remanded this case in light of its decision in *Axon*.

Since April, this case has been delayed four times as follows: **July 10, 2023** (at MVP's request); **August 7, 2023** (at MVP's request, expanding briefing on § 324); **October 11, 2023** (at MVP's request); **November 13, 2023** (at FERC's request). Each time, Landowners opposed the delay. Each time, this Court granted the extension.

Under Rule 8 of the Federal Rules of Appellate Procedure, this Court may grant injunctive relief to preserve the status quo and remedy the manifest injustice unfolding here. Moving the district court for an injunction is impracticable at this stage. The matter is extremely time sensitive. The district court declined jurisdiction and dismissed the case, which is already pending in this Court where the extensions are being granted. MVP has declared this Court is the only court with jurisdiction over the constitutionality of § 324, which Appellees have injected into the case.

It is unclear why a multi-billion-dollar company and the U.S. Government need more time to interpret controlling Supreme Court precedent and the glaring

4

constitutional defects in § 324. This Court should enter a temporary injunction to ensure irreparable harm is not caused on account of this prolonged contemplation. Not granting the injunction would result in manifest injustice to Landowners, whose rights the Constitution is designed to protect.

## STANDARD OF REVIEW

When evaluating a motion for injunctive relief pending court review, courts weigh four factors: (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of relief, (3) whether the balance of equities tips in movant's favor, and (4) whether an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief does <u>not</u> require a showing of "mathematical probability." *Wash. Metro. Area, Etc. v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977). Nor does it require a showing that "a plaintiff's right to final decision, after a trial, be absolutely certain" or "wholly without doubt." *Id.* (internal quotations and citations omitted). It is, instead, a balancing test where "the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the other three factors." *Id.*

"The court is not required to find that ultimate success by the movant is a mathematical probability, and … may grant a stay even though its own approach may be contrary to movant's view of the merits." *Id.* at 843. "The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of

the other factors." *Id.* For preliminary relief pending court review, "**it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.**" *Id*. at 844 (emphasis added) (quoting *Hamilton Watch Co. v. Benrus Watch Co*., 206 F.2d 738, 740 (2d Cir. 1953)). Thus, **a movant must show** "either a combination of probable success and the possibility of irreparable injury **or that serious questions are raised and the balance of hardships tips sharply in his favor**." *Id*. (emphasis added).

As FERC and MVP have conceded, the questions raised here are so serious and substantial that FERC and MVP require months of research, multiple rounds of briefing, and the full coordination and combined attention of multiple federal agencies and the U.S. Government to defend against them.

## ARGUMENT

### I.    LANDOWNERS ARE LIKELY TO PREVAIL ON THE MERITS

#### A.    The United States Supreme Court has repeatedly confirmed district courts retain jurisdiction over separation of powers challenges to agency authority.

The United States Supreme Court has declared that district courts <u>retain</u> subject matter jurisdiction over Non-Delegation Doctrine challenges and has remanded this case in light thereof. In *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244 (2021) the Supreme Court held district courts <u>retain</u> jurisdiction over

6

constitutional challenges *in the precise context of* a delegation challenge relating to the Natural Gas Act. More recently, in *Axon Enter. v. FTC*, 143 S. Ct. 890 (2023), the Supreme Court, in two consolidated cases, issued a <u>unanimous 9-0 decision</u> confirming that district courts <u>retain</u> jurisdiction to adjudicate separation of powers challenges to an agency's enabling legislation, notwithstanding the agency's exclusive review scheme. The Supreme Court vacated this Court's prior order, granted certiorari to Landowners, and remanded this case in light of that decision.

The Supreme Court <u>unequivocally rejected</u> federal agencies' false claims of "expertise" to evaluate separation of powers challenges, noting "The Commission knows a good deal about competition policy, but <u>nothing special about the separation of powers</u>." *Id*. at 905 (emphasis added). "For that reason, we observed two Terms ago, 'agency adjudications are generally ill suited to address structural constitutional challenges'—like those maintained here." *Id*. (quoting *Carr v. Saul*, 593 U.S. __, 141 S. Ct. 1352, 209 L. Ed. 2d 376 (2021) (slip op., at 9)). Likewise, here, FERC has no expertise evaluating the Non-Delegation Doctrine and has openly admitted it cannot adjudicate separation of powers challenges to its authority. *See* 161 FERC ¶ 61,043 (2017).

Given this controlling precedent, there is a strong likelihood of success on the jurisdiction issue, allowing Landowners to receive their "day in court" on the merits of these claims filed almost <u>four years ago</u>.

**B.    Landowners are likely to succeed on all issues associated with Section 324.**

Because controlling Supreme Court precedent directs this Non-Delegation Doctrine challenge to trial on the merits, MVP now claims this Court can ignore the Supreme Court's <u>9-0 decision</u> in *Axon* because § 324 bars Landowners' constitutional case. Section 324 of the Fiscal Responsibility Act ("the Debt Bill")—a sloppy provision hastily devised to win votes needed to avoid a government shutdown—strips the Fourth Circuit of jurisdiction over environmental permitting cases that MVP was consistently losing. It has <u>nothing</u> to do with this case, nor could it.

Section 324(c) ratifies MVP permits and directs agency heads "to continue to maintain such authorizations, permits, verifications, extensions, biological opinions, incidental take statements, and any other approvals or orders issued pursuant to Federal law necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline." Section 324(d) requires the Secretary of the Army to "issue all permits or verifications necessary" to complete and operate MVP. Section 324(e)(1) deprives all courts of jurisdiction to review actions taken by state or federal agencies that grant "an authorization, permit, verification, biological opinion, incidental take statement, or any other approval necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline

8

…." Nothing in § 324 applies to Landowners' separation of powers challenge to the Natural Gas Act.

A*rguendo*, if this Court were to hold § 324 *did* apply to this Non-Delegation Doctrine case, it would render Section 324 unconstitutional. *See* ECF Doc. No. 2011299, Landowners' supplemental briefing on the Debt Bill (August 7, 2023). This action arises under the separation of powers, Articles I-III of the U.S. Constitution. It challenges the constitutionality of the Natural Gas Act, meaning it challenges what Congress did when it created and enabled FERC to decide who can exercise eminent domain. Congress cannot pass a law exempting itself from Constitutional scrutiny. Because Congress's power is derived from the Constitution, that is impossible. **Congress is a creature of the Constitution; it cannot exempt itself from it**.

To recognize that power would be to insulate Congress from Constitutional safeguards. A bare majority of Congress could pass unconstitutional laws favoring a particular ideology and strip all courts of jurisdiction to review them except the one it believed most favorable. In fact, if *Patchak v. Zinke*, 138 S. Ct. 897 (2018) truly stands for what MVP claims—i.e., the ability to exempt Congress from constitutional claims—then Congress could strip <u>all</u> courts of jurisdiction to review such legislation. There would be no checks and balances at all. And the republic

would be in grave danger. After all, *Patchak*[3] stripped <u>all</u> federal courts of jurisdiction. And because the United States Supreme Court has extremely limited <u>original</u> jurisdiction (<u>see</u> Art. III, S. 2, Cl. 2) and many federal laws (like the NGA and § 324) strip state courts of jurisdiction, these unconstitutional acts would go completely unchecked. This is not – and cannot – be the law. "It is emphatically the province of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137 (1803).

### C. Landowners are likely to succeed on the underlying merits of the Non-Delegation Doctrine challenges raised in Counts I-III of the Complaint.

Landowners' Complaint raises three separation of powers challenges. Counts I & II invoke the *federal* Non-Delegation Doctrine to challenge the transfer of legislative power to FERC, an agency within the executive branch. Count III invokes the *private* Non-Delegation Doctrine to challenge the transfer of eminent domain power directly to MVP, a private entity. Recent Supreme Court decisions curtailing previously unchecked agency power strongly suggest Landowners will prevail on these claims.

#### 1. Counts I & II: The *federal* Non-Delegation Doctrine prohibits overly broad delegations of legislative power to agencies like FERC

---

[3] The claims in *Patchak* arose under a law enacted by Congress, *not* under the U.S. Constitution. The claims in *United States v. Klein*, 80 U.S. 128 (1871), however, arose under the Constitution, just as they do here.

Challenges to agency power are increasing. The Major Questions Doctrine has been applied to rein in the EPA. *Chevron* deference is in decline, and the federal Non-Delegation Doctrine is next. Three days ago, the Supreme Court granted certiorari in <u>another</u> *Chevron* companion case. *See, e.g., Relentless, Inc. v. Department of Commerce*, 62 F.4th 621 (1st Cir. 2023) (Sup. Ct. No. 22-1219) (certiorari granted to reconsider *Chevron* deference); *Loper Bright Enters. v. Raimondo*, 143 S. Ct. 2429 (May 1, 2023) (granting certiorari to reconsider *Chevron* deference); *West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587 (2022) (applying the Major Questions Doctrine to the EPA's power); *Gundy v. United States*, 139 S. Ct. 2116 (2019) (confirming the viability and existence of the federal Non-Delegation Doctrine); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) (limiting agency rulemaking authority); *Dept. of Transp. v. Association of American Railroads*, 575 U.S. 43 (2015) (condemning delegations of legislative power to *private* entities as opposed to governmental ones). While FERC and MVP have postponed adjudication, Landowners' underlying merits grow stronger with each passing day.

### a.     The separation of powers doctrine applies equally to all agencies

Principled jurisprudence demands that constitutional principles be applied with <u>equal force to all agencies</u>. Courts cannot say the EPA has "too much power" but then allow FERC—an agency with far *greater* power and fewer controls—to run

wild. *See A. L. A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 553 (1935) (holding that a transfer of unrestricted powers by Congress is a "delegation running riot") (Cardozo, J., concurring). The energy industry wants to handcuff the EPA but empower FERC because FERC rubberstamps seizures of private land on routes most profitable for investors. They argue FERC is a "good" agency because it enables these unconstitutional takings. Courts cannot in good conscience carve out exceptions for FERC to seize property from private citizens like Cletus and hand it to another private party because it is more powerful, more influential, and desires Cletus's land to make money. The dangers of such use of eminent domain were predicted long ago.

"The specter of condemnation hangs over all property. Nothing is to prevent the State from replacing any Motel 6 with a Ritz-Carlton, any home with a shopping mall, or any farm with a factory." *Kelo v. City of New London*, 545 U.S. 469, 503 (2005) (O'Connor, J., dissenting, joined by Justices Scalia, Thomas, and Chief Justice Rehnquist). Justice O'Connor's prescience has proven accurate. "Take" is a sanitized term for "seize against your will." Cletus's land has been seized for private gain and economic development. So has Wendell's farm. Virginia law forbids this. *See* VA Const. Art. 1, s. 11. Sadly, the NGA preempts the Virginia constitution adopted to protect Cletus from such takings for private gain. But this provision is unconstitutional. Congress has no authority to transfer such enormous power to

FERC. *See Schechter Poultry Corp*, 295 U.S. at 553 (holding that the code-making power transferred to the executive branch was an overly broad and unconstitutional delegation of legislative power). The era of eminent domain abuse in America is coming to an end.

      **b.**    **The Non-Delegation Doctrine reins in federal agencies like FERC who unlawfully exercise unfettered discretion to seize private land at will**

In *West Virginia v. EPA*, 142 S. Ct. 2587 (2022), the Supreme Court applied the Major Questions Doctrine—a close cousin of the Non-Delegation Doctrine—to restrict the EPA's power to devise carbon emissions caps. Because there was no "clear congressional authorization" for the EPA to regulate carbon emissions, the Court held the EPA lacked such power. *West Virginia*, 142 S. Ct. at 2614 (quoting *Util. Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)). The Court recognized that capping carbon emissions may indeed be a "sensible solution to the crisis of the day," but held such political considerations are <u>irrelevant</u> to whether the agency possessed such power. *Id*. at 2616. Likewise, here: whether the MVP project is a "sensible" or "good" method of transporting fossil fuels is irrelevant, as is FERC's conclusion this is the most sensible route. The legal inquiry, for Counts I & II, is whether Congress's transfer of legislative power to FERC is properly restricted under the Non-Delegation Doctrine. It is not.

In a since-vindicated dissenting opinion, this Court invoked the separation of powers to rein in federal agencies. *See Am. Lung Ass'n v. EPA*, 985 F.3d 914, 1003 (2021) (Walker, J., dissenting) ("Thus, whatever multi-billion-dollar regulatory power the federal government might enjoy, it's found on the open floor of an accountable Congress, not in the impenetrable halls of an administrative agency — even if that agency is an overflowing font of good sense."); *Id*. at n. 62 (citing *Schechter Poultry Corp*, 295 U.S. 495 (1935); *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892); *Gundy v. United States*, 139 S. Ct. 2116, 2130-31 (2019) (Alito, J., concurring in the judgment)).

FERC exercises unfettered discretion when deciding who can wield the coercive governmental power of eminent domain. FERC has been issuing certificates to seize private land from private citizens at will for nearly a century. Its unconstitutional actions have gone unchecked for decades because landowners lack resources to oppose it. Because land is often seized in poor areas, Landowners like Cletus—situated in rural southwest Virginia—seldom have the ability or resources to fight these takings. FERC's enabling legislation—the NGA—provides no guidance on how FERC should exercise this authority. As in *Schechter Poultry*, Congress delegated unlimited discretion to a federal agency to prescribe its own tests for the use of delegated power. **Just as the President in *Schechter Poultry* was given unconstitutional discretion to draft his own codes of fair competition for**

14

**slaughterhouses, FERC is given unfettered discretion to write its own tests, rules, and policies when deciding who can exercise Congress's power of eminent domain**. Meanwhile, Congress plays Pontius Pilate and washes its hands of the decision claiming "FERC did it." However, FERC "did it" because Congress gave FERC <u>unfettered discretion</u> to make up its own rules for deciding who can exercise eminent domain power to take <u>private</u> land for <u>private</u> gain. These "blank checks" are unconstitutional and Congress is the source of this constitutional violation. *See Gundy v. United States*, 139 S. Ct. 2116, 2144 (2019).

In *Schechter Poultry*, the Court held provisions of the National Industrial Recovery Act invalid because the Act delegated legislative power to the President. The Act gave the President discretion to create his own tests instead of *prescribing* those tests in the Act. Likewise, here, the NGA delegates to FERC discretion to invent its <u>own</u> test for issuing certificates of public convenience and necessity instead of prescribing when and how eminent domain is to be exercised. As in *Schechter Poultry*, this violates the Non-Delegation Doctrine.

### c.     The Non-Delegation Doctrine ensures political accountability when private land is seized from its owners against their will

In *National Federation of Independent Business v. OSHA*, 142 S. Ct. 661 (2022), the Supreme Court applied the Major Questions Doctrine to grant stays because OSHA's authority to ensure "safe and healthful working conditions" did <u>not</u> encompass the power to mandate the vaccination of most employees. The Court

specifically noted the importance of the Non-Delegation Doctrine in controlling agency power:

> [T]he major questions doctrine is closely related to what is sometimes called the nondelegation doctrine. Indeed, for decades courts have cited the nondelegation doctrine as a reason to apply the major questions doctrine. *E.g., Industrial Union Dept., AFL-CIO v. American Petroleum Institute*, 448 U.S. 607, 645, 100 S. Ct. 2844, 65 L. Ed. 2d 1010 (1980) (plurality opinion). Both are designed to protect the separation of powers and ensure that any new laws governing the lives of Americans are subject to the robust democratic processes the Constitution demands.

142 S. Ct. at 668-69 (Gorsuch, J., concurring, joined by Thomas, J., and Justice Alito). As Justice Gorsuch observed, the purpose of the Non-Delegation Doctrine is to ensure political accountability for unpopular legislative decisions. *See id*. at 669 (“**The nondelegation doctrine ensures democratic accountability by preventing Congress from intentionally delegating its legislative powers to unelected officials.** Sometimes <u>**lawmakers may be tempted to delegate power to agencies to reduc[e] the degree to which they will be held accountable**</u> for unpopular actions.”) (internal quotations omitted). That is precisely what happened here. Congress did not vote to seize Cletus’s land or any of the other parcels on the pipeline route. Nor would Congress do that because they would have to explain to their constituents why they are seizing <u>private</u> land that would otherwise have to be purchased on the open market and transferring it to another <u>private</u> entity. Section

324 does nothing to address that; it merely instructs courts to ignore environmental laws and rubber stamp environmental permits.

**2.    Count III: The private Non-Delegation Doctrine prohibits the delegation of eminent domain power to a private entity**

"When it comes to [delegations of power to] private entities, however, there is not even a fig leaf of constitutional justification." *Department of Transportation v. Association of American Railroads*, 575 U.S. 43, 62 (2015) (Alito, J., concurring) (emphasis added). In *Ass'n of Am. R.R.*, the Court agreed the delegation of power to Amtrak would have been unconstitutional if Amtrak had been purely private, not "quasi-governmental." Here, MVP is a purely private entity. Unlike governmental entities, "[p]rivate entities are not vested with 'legislative Powers.' Art. I, §1. Nor are they vested with the 'executive Power.'" *Id*. at 62. This was reiterated in *OSHA*, where the Court cited *Ass'n of Am. R.R* and confirmed: "If Congress could hand off all its legislative powers to unelected agency officials, it 'would dash the whole scheme' of our Constitution and enable intrusions into the private lives and freedoms of Americans by bare edict rather than only with the consent of their elected representatives." *OSHA*, 142 S. Ct. at 668-69 (Gorsuch, J., concurring).

Oddly, in *PennEast*, the 5-4 majority implicitly reasoned that Congress *can* delegate its eminent domain power to a pipeline company, but that issue was neither briefed nor argued by the parties. *See* 141 S. Ct. at 2262. Briefing and argument addressed Eleventh Amendment immunity, not the delegation of eminent domain

17

power to private parties. Only after the majority reinterpreted the delegation issue did it uphold that delegation by a single vote. All other precedent, before and after, strictly prohibits delegations of legislative power to private entities. When fully briefed and argued, the direct delegation of the legislative power of eminent domain to a private party like MVP has been and will be rendered unconstitutional.

Eminent domain is, and always has been, legislative power. *See, e.g.,* I William Blackstone, Commentaries on the Laws of England, *135. Were it not, Congress could not delegate it. MVP – a private party – cannot wield Congress's power of eminent domain. If Congress wants to seize land using eminent domain, <u>Congress</u> must exercise its <u>own</u> legislative power to seize the land. FERC's experts can <u>propose</u> the best route that inflicts the least amount of environmental harm, minimizes costs, and maximizes efficiency; only Congress can exercise eminent domain power to take the land. The Founders adopted this restriction to protect private property and secure individual liberty.

## II.     THE OTHER FACTORS STRONGLY FAVOR LANDOWNERS

### A.     Landowners will suffer irreparable harm in the absence of injunctive relief

A continuing trespass on real property causes "irreparable injury" that favors injunctive relief. *See, e.g., Levisa Coal Co. v. Consolidation Coal Co*., 276 Va. 44, 62 (2008). Even where damages to the real property are theoretically "quantifiable," injunctions are *still* appropriate to protect landowners. *Blue Ridge Poultry & Egg*

*Co. v. Clark,* 211 Va. 139 (1970). "The doctrine of 'balancing of equities' must be viewed in light of our long-standing pronouncement that a private landowner is to be protected for injuries he may sustain 'even though inflicted by forces which constitute factors in our material development and growth.'" *Id.* at 144.

This Circuit also recognizes Landowners' sacred right to property. "Courts in this Circuit have broadly held that '[w]hen land is the subject matter of the agreement, the legal remedy is assumed to be inadequate, since **each parcel of land is unique**." *Patriot-BSP City Ctr. II v. U.S. Bank Nat'l Ass'n*, 715 F. Supp. 2d 91, 96 (D.D.C. 2010) (quoting *Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 75 (D.D.C. 2008)). "'It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and **its loss is always an irreparable injury**.'" *Peterson v. District of Columbia Lottery & Charitable Control Bd.*, 1994 U.S. Dist. LEXIS 10309, *14 (D.D.C. 1994) (quoting *United Church of the Medical Ctr. v. Medical Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982)). *See also S. Utah Wilderness Alliance v. Allred*, 2009 U.S. Dist. LEXIS 30664, *8 (D.D.C. 2009) ("Because of the **threat of irreparable harm** to public land if the leases are issued, the balancing of equities also tips in favor of the plaintiffs.").

The delays caused by FERC and MVP facilitate the continual trespass causing irreparable harm to Landowners' property. MVP's agents are blasting, digging,

clearing trees, and continually trespassing on the land using the unlawful eminent domain power granted to MVP via the NGA. *See* Declarations of Cletus Bohon and Aimee Hamm. MVP's presence on the land is made possible only via the NGA's unlawful grant of eminent domain power. To prevent further irreparable harm, this Court should enjoin MVP from using the power of eminent domain to access Landowners' property until these serious constitutional issues are adjudicated.

### B. The balance of equities tips in favor of Landowners and against Appellees who are intentionally stalling adjudication of the merits of this case

Any potential harm (which is minimal) MVP suffers by a temporary injunction pending adjudication of these issues is MVP's own doing. If MVP wishes to indefinitely delay this case, those delays should be accompanied by an injunction preventing MVP's use of eminent domain on Landowners' property until their claims are heard.

MVP and FERC claim they need months to brief these complex constitutional issues. FERC has proclaimed the constitutional issues involved here are so important and so complex that the U.S. Government needs to coordinate its defense with multiple federal agencies. MVP has requested multiple delays to file briefs. Yet, when the Fourth Circuit stopped pipeline construction three months ago, MVP drafted and filed a **35-page** Emergency Motion to the United States Supreme Court only ***three days later****. Compare* Order Granting Stay Pending Appeal, No. 23-1592 (4th Cir. **July 10, 2023**) and Order Granting Stay Pending Appeal, No. 23-1384 (4th

Cir. **July 11, 2023**) *with* MVP's Emergency Application to Chief Justice Roberts to Vacate the Stays (**July 14, 2023**). MVP only seeks "more time" when the delay is convenient for its construction schedule. Otherwise, it can draft complex motions to the highest Court in a matter of days.

MVP will no doubt claim its project is 94% complete and any hindrance to construction will delay the project's completion.[4] However, MVP has been claiming the project was 94% complete for over two years! *See* **Exhibit 1**. MVP has either made no progress at all in two years or its evaluations of its progress are wholly unworthy of belief. Either way, MVP has plenty of work left to do without disturbing Landowners' property. Preserving the status quo until these issues are adjudicated will not harm MVP.

### C. Injunctive relief pending review of serious constitutional questions is in the public interest

Given the grave nature of these constitutional issues, an injunction is in the public interest. Even when eventually completed, this pipeline will not affect the supply of natural gas in this country for several years. "[N]atural gas demand in the Northeast, Mid-Atlantic, and Southeast regions is already amply supplied by existing pipeline infrastructure including the Transcontinental Gas Pipe Line ('Transco') system." *See* July 3 Motion for Stay Pending Appeal at 22-23, 4th Cir. Case No. 23-

---

[4] *See* https://www.bloomberg.com/features/2023-mountain-valley-pipeline-west-virginia

1594 (consolidated with No. 23-1592), ECF No. 24-1 (July 3, 2023). Even if completed <u>today</u>, "MVP is not capable of increasing the supply for at least several years" because the Transco system it will connect to is already "fully subscribed," meaning it "cannot accommodate additional gas deliveries from the MVP without replacing and, therefore, displacing gas already flowing on the pipeline." *Id.*

Accordingly, only Landowners face irreparable injury here. Because of the serious nature of these constitutional issues, the public is best served by having these legal questions decided as expeditiously as possible. It is well past time that Landowners get their day in court.

WHEREFORE, Landowners move for emergency injunctive relief to halt irreparable injury to real property by temporarily enjoining FERC and MVP from exercising <u>Congress's</u> legislative powers, including the power of eminent domain, to preserve the status quo until their claims are adjudicated. This includes all corollaries emanating from that unlawful delegation, including accessing or entering their private property, constructing, blasting, tree-clearing, building, or performing any other activities on the land belonging to Cletus and Beverly Bohon of Montgomery County, VA, Wendell and Mary Flora of Franklin County, VA, and Aimee and Matt Hamm of Bent Mountain, VA.

Respectfully submitted this 16th day of October, 2023

CLETUS WOODROW AND BEVERLY ANN BOHON,
WENDELL WRAY AND MARY MCNEIL FLORA,
AND ROBERT MATTHEW AND AIMEE CHASE HAMM,

By: _____ */s/ Mia Yugo*_____
*Of Counsel*


Mia Yugo (D.C. Cir. Bar. No. 62808)
Christopher E. Collins
YUGO COLLINS, PLLC
25 Franklin Road SW
Roanoke, VA 24011
(540) 861-1529
mia@yugocollins.com
chris@yugocollins.com

*Counsel for Landowners*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 16, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties via the Court's electronic filing system.

Jeremy C. Marwell
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6507
E-mail: jmarwell@velaw.com

Brian Dennis O'Neill
VAN NESS FELDMAN LLP
1050 Thomas Jefferson Street, NW Suite 700
Washington, DC 20007 202-298-1983
Fax: 202-338-2361 E-mail: bdo@vnf.com

Wade W. Massie
PENN, STUART & ESKRIDGE
P.O. Box 2288
Abingdon, VA 24212
(276) 623-4409
Fax: (276) 628-5621
E-mail: wmassie@pennstuart.com
                    *Counsel for Mountain Valley Pipeline, LLC*
Scott Ediger
Robert Solomon
Matthew R. Christiansen
FEDERAL ENERGY REGULATORY COMMISSION
888 First Street, NE Washington, DC 20426
202-502-8509 E-mail: scott.ediger@ferc.gov
                    *Counsel for FERC*

                            */s/ Mia Yugo*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Circuit Rule 32(e), I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,173 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), and therefore is within the limit of 5,200 words.

I further certify that this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in Times New Roman 14-point font using Word.

*/s/ Mia Yugo*

October 16, 2023

**ADDENDUM**

## ADDENDUM TABLE OF CONTENTS

| **Description of Item** | **Addendum Page No.** |
|---|---|
| Combined Certificates – Certificate as to Parties, Rulings, and Related Cases and Corporate Disclosure Statement........................ | ADD. 1 |
| Exhibit 1 – Mountain Valley Pipeline Activities Progress September 2021 ................. | ADD. 3 |
| Declaration of Cletus Bohon ............................ | ADD. 4 |
| Declaration of Aimee Chase Hamm.................. | ADD. 12 |

## COMBINED CERTIFICATES

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici appearing Below

The parties that appeared before the U.S. District Court for the District of Columbia were Cletus Woodrow Bohon and Beverly Ann Bohon (the "Bohons"), Wendell Wray Flora and Mary McNeil Flora (the "Floras"), and Robert Matthew Hamm and Aimee Chase Hamm (the "Hamms"), *Plaintiffs-Appellants*, and Federal Energy Regulatory Commission ("FERC" or "the Commission") and Mountain Valley Pipeline, LLC ("MVP"), *Defendants-Appellees.*

### B. Parties and Amici appearing in this Court

The parties appearing in this Court are the same parties that appeared in the underlying district court proceedings and before the U.S. Supreme Court. Amici, Constitutional Counsel Group, appeared before the U.S. Supreme Court but no Amici appeared in this Court prior to certiorari. Counsel are presently unaware of *amici curiae* appearing in this case as of the date and time of this filing.

### C. Rulings under Review

The rulings under review in this case are the May 6, 2020, Memorandum Opinion and Order of the U.S. District Court for the District of Columbia (Boasberg,

J.), Case No. 1:20-cv-00006-JEB (D.D.C.), granting the Defendants-Appellees' motions to dismiss for lack of subject matter jurisdiction.

### D. Related Cases

Counsel are aware of *Bold Alliance, et al., v. FERC, et al.,* (D.C. Circuit Case No. 18-5322). Said case mistakenly listed Wendell and Mary Flora (the Floras) as parties. The Floras did not authorize representation and were not aware that they were parties in *Bold Alliance*. Therefore, Counsel for Appellants notified Counsel in *Bold Alliance* and requested that the Floras be removed as parties in *Bold Alliance*.

**CORPORATE DISCLOSURE STATEMENT**

This Appeal is not filed on behalf of a corporation. Plaintiffs-Appellants are individual landowners whose property is on the path of the pipeline route.

October 16, 2023

By: _____/s/ Mia Yugo_____
        *Of Counsel*

Mia Yugo (D.C. Cir. Bar. No. 62808)
Christopher E. Collins
YUGO COLLINS, PLLC
25 Franklin Road SW
Roanoke, VA 24011
(540) 861-1529
mia@yugocollins.com
chris@yugocollins.com

*Counsel for Landowners*

**ADD. 2**

Home

Overview    Local Summaries    Safety    News & Info    Community Support    Contact Us    Blog



The Mountain Valley Pipeline (MVP) project is a natural gas pipeline system that spans approximately 303 miles from northwestern West Virginia to southern Virginia – and as an interstate pipeline will be regulated by the Federal Energy Regulatory Commission (FERC). The MVP will be constructed and owned by Mountain Valley Pipeline, LLC (Mountain Valley), which is a joint venture of EQM Midstream Partners, LP; NextEra Capital Holdings, Inc.; Con Edison Transmission, Inc.; WGL Midstream; and RGC Midstream, LLC. EQM Midstream Partners will operate the pipeline and own a significant interest in the joint venture.

With a vast supply of natural gas from Marcellus and Utica shale production, the Mountain Valley Pipeline is expected to provide up to two million dekatherms per day of firm transmission capacity to markets in the Mid- and South Atlantic regions of the United States. The MVP will extend the Equitrans transmission system in Wetzel County, West Virginia, to Transcontinental Gas Pipeline Company's (Transco) Zone 5 compressor station 165 in Pittsylvania County, Virginia. As currently planned, the pipeline will be 42 inches in diameter and will require approximately 50 feet of permanent easement (with 125 feet of temporary easement during construction). In addition, the project will require three compressor stations, with identified locations in Wetzel, Braxton, and Fayette counties of West Virginia.

The pipeline will be governed by the United States Natural Gas Act, which requires a Certificate of Convenience and Necessity (Certificate) from the FERC. Mountain Valley received this Certificate on October 13, 2017 and construction activities began in early 2018. With an estimated 20 linear miles of pipe remaining, MVP's total project work is nearly 94% complete, which includes 53% of the right-of-way fully restored – the details of which are shown on the adjacent map.

| Interconnect Request Form | Interconnect Documents |
| --- | --- |

As significant interest owner and operator of the proposed pipeline, interconnect links will redirect users to the EQM Midstream Partners, LP Customer Portal.

**ADD. 3**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLETUS WOODROW AND          )
BEVERLY ANN BOHON, *et al.,*  )
                             )
    *Appellants,*           )
                             )
v.                           )          **No. 20-5203**
                             )          On appeal from
FEDERAL ENERGY               )          1:20-cv-00006-JEB (D.D.C.)
REGULATORY                   )
COMMISSION, *et al.,*        )
                             )
    *Appellees.*            )

## DECLARATION OF CLETUS WOODROW BOHON

I, <u>Cletus Woodrow Bohon</u>, of Montgomery County, Virginia, hereby

depose and state that I am over the age of 18 and am in all respects

competent and qualified to make this Declaration. All facts stated are

within my personal knowledge and are true and correct.

    1.  I am a proud Virginian landowner residing in Elliston, Virginia.

    2.  My land is located in Montgomery County, which is in rural

Southwest Virginia.

    3.  I have lived in this house in Montgomery County for 30+ years.

I live there with my wife, Beverly Ann Bohon.

    4.  I have personal knowledge of MVP's activities on our land.

**ADD. 4**

5. In the past few weeks alone, MVP has significantly ramped up activity on my property and caused a lot of damage to my land while building their pipeline. This includes, but is not limited to, the following:

a.    ***Blasting***. MVP has been drilling holes and blasting, with dynamite, to remove rocks from their path.

b.    ***Tree clearing***. MVP has been clearing and removing old trees that were piled up on my land.

c.    ***Pipe***. Numerous sections of large pipe have been delivered and stacked up in or around my property.

d.    ***Trenches***. Trenches have not yet been dug, but MVP has brought large equipment in what appears to be preparation for trenching.

e.    ***Bulldozers & machinery***. MVP has many large excavators and bulldozers in or around my property. MVP has been moving and using these bulldozers to clear trees from Poor Mountain.

f.    ***MVP's agents & workers***. There have been a lot of strange people wandering on my land recently, including construction workers and security personnel. Some of MVP's agents have approached our home and gone outside their right of way. When I confronted them and asked why they were wandering outside their right of way and so

close to our home, they said they were "lost," did not know where the right of way was, were new on the job, or "accidentally" went outside the right of way.

g.     ***Loud Noises***. My wife and I moved here for the peace and quiet. Now, when we sit on our porch, instead of hearing the birds singing, we hear the sound of loud machinery. Beeping, clattering, and pounding on rocks with jackhammers is what we endure all day.

6. My wife and I have been very disturbed and distressed by these unwelcome invasions of our privacy, and the destruction of our land.

7. I have taken many pictures of the above-described activity. This includes pictures of pipe, blast holes, bulldozers, and other large machinery & equipment, showing the magnitude of activity in recent weeks. The attached pictures were taken by me using my phone.

I hereby state, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.


Executed this 15ᵗʰ day of October 2023.


*Cletus Woodrow Bohon*
Cletus Woodrow Bohon

328°NW (T)  ◉ 37°12'42"N, 80°11'44"W ±32ft  ▲ 1694ft



05 Oct 2023, 18:35:11



USCA Case #2022061 Document #2022061 Filed: 10/16/2023

W 270 NW 300 330 N 0 30 60 NE

☼ 347°N (T) ◉ 37°12'41"N, 80°11'44"W ±26ft ▲ 1689ft

16 Sep 2023, 11:00:58

**ADD. 8**

✪ 108°E (T)  ◉ 37°12'44"N, 80°11'47"W ±36ft  ▲ 1671ft



16 Sep 2023, 10:58:24

ADD. 9





USCA Case #24-5203    Filed: 10/16/2023    Document #2022061

01 Sep 2023, 18:54:50

246°SW (T) ◉ 37°12'43"N, 80°11'46"W ±16ft ▲1655ft

ADB-11

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLETUS WOODROW AND )
BEVERLY ANN BOHON, *et al.,* )
)
    *Appellants,* )
) **No. 20-5203**
v. ) On appeal from
) 1:20-cv-00006-JEB (D.D.C.)
FEDERAL ENERGY )
REGULATORY )
COMMISSION, *et al.,* )
)
    *Appellees.* )

### DECLARATION OF AIMEE CHASE HAMM

I, Aimee Chase Hamm, of Bent Mountain, Virginia, hereby depose and state that I am over the age of 18 and am in all respects competent and qualified to make this Declaration. All facts stated are within my personal knowledge and are true and correct.

1. My husband, Robert Matthew Hamm, and I live on Bent Mountain, Virginia, a beautiful mountainous area located in Roanoke County in rural Southwest Virginia.

2. My husband and I have lived in this home for 20 years. I was brought home to Bent Mountain as a newborn and spent weekends and summers here with my family since 1975.

3. I have personal knowledge of MVP's recent activities on our land.

4. I have taken lots of pictures and videos of what has been happening here in recent weeks. My pictures are attached. They show the disturbances and destruction on and around our property on Bent Mountain. We are devastated with this situation.

5. The state of construction is as follows:

a. *Access easement; daily use of vehicles & heavy equipment*. MVP is using our land to access other parcels on Bent Mountain. I do not know the exact number, but my best estimate is that there are between 20-40 vehicles passing through here daily. These vehicles include heavy, earth-moving equipment, cranes, bulldozers, and trucks.

b. *Pipe*. There are large sections of pipe laying around. These pipes were delivered via tractor-trailers that made their way up the mountain carrying two or three sections of pipe with each load.

c. *Trenches*. No trenches are dug yet.

d. *Blasting*. It disturbed my daughter-in-law and her newborn.

e. *People*. I do not know the exact number, but I would estimate there are about 50-60 MVP workers wandering around here every day.

**ADD. 13**

f. *Speeding; endangering children, grandchildren, dogs,*

*horses*. MVP's vehicles have been speeding recklessly up the mountain and through our property, endangering our children, grandchildren, dogs, and horses. We asked them to slow down multiple times. It was so bad we contacted security and asked them to put up a radar.

g. *Noise disturbing newborn*. This heavy equipment makes a lot of noise every day. It really upsets my children and my newborn granddaughter, who was born in September.

6. My late father, Fred Vest, a patriot and Vietnam war veteran who passed away two years ago, called Bent Mountain his "Paradise." Dad loved his land. He named his farm Mountain Paradise Farm in 1972. It would break his heart to see what is happening on Bent Mountain.

I hereby state, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this __15__ day of October 2023.

Aimee Chase Hamm

**ADD. 14**



USCA Case #22-1039    Document #2022031    Filed: 11/16/2023    Page 48 of 52

ADD._15





ADD. 17



USCA Case #20-5203    Document #2022031    Filed: 10/13/2021    Page 13 of 52