**ORAL ARGUMENT NOT YET SCHEDULED**

No. 20-5203

# In the United States Court of Appeals
## for the District of Columbia Circuit
———————

Cletus Woodrow Bohon; Wendell Flora; Robert Matthew Hamm; Beverly Ann Bohon; Mary Flora; Aimee Chase Hamm,
*Plaintiffs-Appellants*
v.
Federal Energy Regulatory Commission; Neil Chatterjee, In his official capacity as Chairman of the Federal Energy Regulatory Commission; Mountain Valley Pipeline, LLC,
*Defendants-Appellees*

**On Appeal from the United States District Court
for the District of Columbia, No. 1:20-cv-00006-JEB**
———————

**BRIEF OF APPELLANTS**
———————

John R. Thomas, Jr. (D.C. Bar No. 1027981)
  *Counsel of Record*
Mia Yugo *(Admission Pending)*
HAFEMANN MAGEE & THOMAS, LLC
11 Franklin Road SE, Suite 200
Roanoke, VA 24011
(540) 759-1660
Email: jt@fed-lit.com

*Counsel for Plaintiffs-Appellants*

**COMBINED CERTIFICATES**

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

**A. Parties and Amici appearing Below**

The parties that appeared before the U.S. District Court for the District of Columbia were Cletus Woodrow Bohon and Beverly Ann Bohon (the "Bohons"), Wendell Wray Flora and Mary McNeil Flora (the "Floras"), and Robert Matthew Hamm and Aimee Chase Hamm (the "Hamms"), *Plaintiffs-Appellants*, and Federal Energy Regulatory Commission ("FERC" or "the Commission") and Mountain Valley Pipeline, LLC ("MVP"), *Defendants-Appellees.*

**B. Parties and Amici appearing in this Court**

The parties appearing in this Court are the same parties that appeared in the underlying district court proceedings. Counsel are presently unaware of *amici curiae* appearing in this case as of the date and time of this filing.

**C. Rulings under Review**

The rulings under review in this case are the May 6, 2020, Memorandum Opinion and Order of the U.S. District Court for the District of Columbia (Boasberg, J.), Case No. 1:20-cv-00006-JEB (D.D.C.), granting the Defendants-Appellees' motions to dismiss for lack of subject matter jurisdiction.

**D. Related Cases**

Counsel are aware of *Bold Alliance, et al., v. FERC, et al.,* (D.C. Circuit Case No. 18-5322). Said case mistakenly listed Wendell and Mary Flora (the Floras) as parties. The Floras did not authorize representation and were not aware that they were parties in *Bold Alliance*. Therefore, Counsel for Appellants notified Counsel in *Bold Alliance* and requested that the Floras accordingly be removed as parties in *Bold Alliance*.

November 30, 2020

Respectfully submitted,

/s/ John R. Thomas, Jr.

*Counsel for Plaintiffs-Appellants*

**CORPORATE DISCLOSURE STATEMENT**

This Appeal is not filed on behalf of a corporation. Plaintiffs-Appellants are individual landowners whose property is on the path of the pipeline route.

November 30, 2020

Respectfully submitted,

/s/ John R. Thomas, Jr.

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT ........................................ ii

TABLE OF AUTHORITIES ...................................................v

GLOSSARY OF ABBREVIATIONS .................................. viii

INTRODUCTION ...................................................1

JURISDICTIONAL STATEMENT ........................................2

STATEMENT OF THE ISSUE...........................................2

STATUTES AND REGULATIONS...........................................2

STATEMENT OF THE CASE...........................................3

    A.   Factual background ........................................3

    B.   Procedural history...........................................5

SUMMARY OF ARGUMENT ...........................................6

STANDARD OF REVIEW ...........................................6

ARGUMENT ...........................................7

I.   The district court erred when it dismissed the case for lack of subject matter jurisdiction ...........................................7

    A.   The Commission has neither the expertise nor jurisdiction to adjudicate this issue...........................................9

        1.   Agencies have special expertise in fact-based, scientific, and technical inquiries arising under the statute........................9

2.   Agencies lack expertise and authority to adjudicate the constitutionality of the statutes they administer .......................10

3.   FERC admits it has no expertise to decide an issue arising under the Constitution and has expressly disclaimed jurisdiction ...............................................................................16

B.   Meaningful means effectual, not *eventual* judicial review .................18

1.   The timing of judicial review matters because "eventual" relief is not sufficient as a matter of law....................................19

2.   Eventual judicial review is not meaningful because it would require landowners to "surrender the farm to the taking"— not merely to bet it—and would therefore result in irreparable harm .......................................................................21

C.   Legislative History .............................................................................24

CONCLUSION ...................................................................................................26

CERTIFICATE OF COMPLIANCE....................................................................27

CERTIFICATE OF SERVICE .............................................................................28

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**

Allegheny Defense Project v. Federal Energy Regulatory Commission,*
  964 F.3d 1 (D.C. Cir. 2020)...................................................................... 19, 20, 23

Bowen v. Michigan Academy of Family Physicians,
  476 U.S. 667 (1986) ..................................................................................14

Cirko on behalf of Cirko v. Commissioner of Social Security,*
  948 F.3d 148 (3d Cir. 2020) ...................................................... 10, 11, 14, 15, 16

Columbia Gas Transmission, LLC,
  170 FERC ¶ 61,246 (2020)..................................................................20

Delaware Riverkeeper Network v. FERC,
  753 F.3d 1304 (D.C. Cir. 2014).............................................................20

Delaware Riverkeeper Network v. FERC,
  895 F.3d 102 (D.C. Cir. 2018)...............................................................15

Elgin v. Dept. of Treasury,
  567 U.S. 1 (2012) ........................................................................... 10, 13

Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
  561 U.S. 477 (2010) ................................................... 7, 9, 10, 11, 14, 18, 21, 22

Johnson v. Robison,*
  415 U.S. 361 (1974) ............................................................... 8, 9, 10, 14, 16, 18

Levisa Coal Co. v. Consolidation Coal Co.,
  276 Va. 44 (2008).................................................................................23

Mathews v. Eldridge,*
  424 U.S. 319 (1976) ..............................................................................14

McCarthy v. Madigan,
  503 U.S. 140 (1992) ..............................................................................10

McNary v. Haitian Refugee Center, Inc.,*
   498 U.S. 479 (1991) ..................................................................24

NAACP v. USPS,*
   2020 WL 5995032 (D.D.C. October 10, 2020)................................... 8, 19, 20, 24

NO Gas Pipeline v. FERC,*
   756 F.3d 764 (D.C. Cir. 2014)..............................................................15

O.A. v. Trump,*
   404 F.Supp.3d 109 (D.D.C. Aug. 2, 2019)............................................17

Peoples Natural Gas Co. v. Public Service Com.,
   270 U.S. 550 (1926) ........................................................ 24, 25

Piersall v. Winter,
   435 F.3d 319 (D.C. Cir. 2006)..............................................................6

Public Utilities Commission of State of Cal. v. U.S.,
   355 U.S. 534 (1958) .............................................................. 11, 14, 17

Shalala v. Illinois Council on Long Term Care, Inc.,
   529 U.S. 1 (2000) ...................................................................8

Spire STL Pipeline LLC,
   169 FERC ¶ 61,134, 2019 WL 6242969 (2019) ..................................23

Thunder Basin Coal Co. v. Reich,
   510 U.S. 200 (1994) ................................................................. 8, 12

Udall v. Tallman,
   380 U.S. 1 (1965) ...................................................................9

United States v. Ruzicka,
   329 U.S. 287 (1946) ...............................................................11

Whitman v. Department of Transportation,
   547 U.S. 512 (2006) (per curiam) .......................................................7

Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.,
379 U.S. 411 (1965) ....................................................................................9

**Constitution and Statutes**

U.S. Const. Art. I..................................................................... 1, 2, 3, 5

U.S. Const. Art. II .................................................................. 1, 2, 3, 5

U.S. Const. Art. III ................................................... 1, 2, 3, 5, 9, 11, 25

15 U.S.C. § 717 *et seq*................................. 2, 3, 4, 5, 6, 8, 15, 16, 17, 18, 19, 24, 25

15 U.S.C. § 717f..............................................................................3

15 U.S.C. § 717f(e) .........................................................................4

15 U.S.C. § 717f(h) .........................................................................4

15 U.S.C. § 717r(b) .....................................................................8, 15

28 U.S.C. § 1291 ............................................................................2

28 U.S.C. § 1331 ....................................................................... 2, 7, 8

**Rules**

Fed. R. Civ. P. 12(b)(1)....................................................................5

**Other Authorities**

H.R.Rep.No.6721, 75th Cong., 1st Sess....................................................24

H.R.Rep.No.6725, 75th Cong., 1st Sess....................................................25

\* Authorities chiefly relied upon are marked with asterisks.

# GLOSSARY OF ABBREVIATIONS

Cletus Woodrow Bohon and Beverly Ann Bohon (the "Bohons")

Federal Energy Regulatory Commission ("FERC" or "the Commission")

FERC Order October 13, 2017 ("MVP Certificate" or "2017 FERC Order")

Federal Power Commission ("FPC")

Wendell Wray Flora and Mary McNeil Flora (the "Floras")

Robert Matthew Hamm and Aimee Chase Hamm (the "Hamms")

Mountain Valley Pipeline ("MVP")

Natural Gas Act ("NGA")

Recipient of a certificate of public convenience and necessity ("holder")

## INTRODUCTION

The issue before this Court is a focused question of jurisdiction. District courts routinely decide facial constitutional challenges arising under the separation of powers doctrine of Articles I, II, and III of the Constitution. The question, then, is whether Congress intended to strip district courts of original jurisdiction over a facial challenge to Congress's delegation of eminent domain power.

To discern congressional intent, courts look at several factors including agency "expertise" and the opportunity for "meaningful" review. If the issue arises under the statute the agency administers, the agency typically has expertise because it is equipped to decide issues requiring special technical or scientific knowledge. This makes agency review meaningful. If, however, the issue arises under the Constitution, the agency lacks expertise and authority to adjudicate the issue. This makes agency review meaningless. In such instances, inferring jurisdictional preclusion is illogical because Congress would not have wanted to send a petitioner through a needlessly complex and futile process in order to "eventually" win access to an Article III court. Eventual judicial review is not meaningful.

The "real-world consequence" of implicit preclusion for landowners is a theatre of the absurd: an entirely meaningless agency review process that does nothing but arbitrarily delay landowners' ability to have their day in court while pipeline construction irreparably transforms their private property.

1

## JURISDICTIONAL STATEMENT

The district court erroneously held that it did not have jurisdiction over this case under 28 U.S.C. § 1331. Plaintiffs-Appellants filed a timely notice of appeal on July 6, 2020. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court's order, entered on May 6, 2020, granting Defendants-Appellees' motions to dismiss for lack of jurisdiction constitutes a final appealable decision.

## STATEMENT OF THE ISSUE

Did Congress intend for a facial constitutional challenge to the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.*  that falls squarely outside of the agency's technical expertise—and arises under Articles I, II, and III of the Constitution—to nevertheless go through a futile agency review process before *eventually* reaching a court with jurisdiction to provide the relief sought?

## STATUTES AND REGULATIONS

The relevant statutes and constitutional provisions are included in the addendum to this brief.

# STATEMENT OF THE CASE

## A. Factual background.

Articles I, II, and III of the Constitution of the United States vest power in three branches of government: legislative, executive, and judicial. Article I vests all legislative power in Congress. Congress is charged with enacting laws that limit the people's liberties. Article II vests executive power in the President (and his agencies). Article III vests judicial power over cases and controversies in the Supreme Court and such inferior courts that Congress may ordain. From these Articles, i.e., the vesting clauses, is derived the "separation of powers" doctrine. This doctrine separates sovereign power into three separate entities. Neither Congress nor any other branch of government may delegate its vested powers away to another branch. That prohibition on the delegation of powers is the "non-delegation doctrine," which emanates directly from the vesting clauses' separation of powers.

In 1938, Congress passed the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.* In 1947, Congress amended the NGA to enable the Federal Power Commission ("FPC")—the predecessor to today's Federal Energy Regulatory Commission ("FERC" or "the Commission")—to issue a "certificate of public convenience and necessity to a natural-gas company for the transportation in interstate commerce of natural gas." 15 U.S.C. § 717f. Under the NGA, the recipient of a certificate of public convenience and necessity ("holder") also acquires the right of eminent domain. 15

3

U.S.C. § 717f(h). As a federal agency, FERC is an arm of the executive branch. The Commission is composed of up to five commissioners appointed by the President.

By enacting the NGA, Congress—which frequently calls on agencies for factual, technical, and scientific expertise—delegated expansive legislative authority to FERC to determine when eminent domain power should be conveyed to an applicant. Congress did not, however, draft definite standards to guide FERC in carrying out Congress's will when making such decisions. Instead, Congress deferred entirely to FERC, allowing the agency to unilaterally create and impose its own standards, tests, and rules for determining who can sell or transport natural gas, how much they can charge for their products and services, and to whom they can sell them. Most significantly here, 15 U.S.C. § 717f(e) delegates Congress's legislative powers by empowering FERC to issue "certificates of public convenience and necessity" to entities wishing to construct or extend natural gas facilities. These certificates are used by natural-gas companies to exercise eminent domain authority under 15 U.S.C. § 717f(h). Not having any standards laid forth by Congress, FERC created its own test, i.e., its Statement of Policy, to determine which applicant is "qualified" to receive a certificate. An applicant that meets FERC's internally designed tests for public convenience and necessity obtains a Certificate, which conveys the power of eminent domain to the applicant under 15 U.S.C. § 717f(h).

Acting under the unconstitutional and illegitimate power delegated to it via the NGA, FERC issued a Certificate of Public Convenience and Necessity to Mountain Valley Pipeline ("MVP"), a private certificate holder, to build an interstate natural gas pipeline from Wetzel County, West Virginia, to Pittsylvania County, Virginia. FERC issued the Order on October 13, 2017, permitting MVP to construct, maintain, and operate a natural gas pipeline along a route selected by MVP ("MVP Certificate" or "2017 FERC Order").

Plaintiffs-Appellants own property along the pipeline route and do not wish to convey their property interests to MVP. Because MVP has not been able to convince the Appellants to convey their property interests willingly by contract, MVP filed actions seeking to exercise its delegated right of eminent domain under the NGA and forcibly take the Appellants' property against their wishes.

**B. Procedural history.**

On January 2, 2020, Appellants filed a facial constitutional challenge in the United States District Court for the District of Columbia. Appellants alleged three facial counts arising under Articles I, II, and III of the U.S. Constitution. Defendants FERC and MVP filed Motions to Dismiss on a variety of grounds, including a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. On May 6, 2020, the district court erroneously held that it lacked jurisdiction and dismissed the case. On July 6, 2020, Plaintiffs-Appellants timely filed a notice of appeal to this Court.

## SUMMARY OF ARGUMENT

District courts have original jurisdiction over actions arising under federal law unless Congress expressly or implicitly precludes it. The NGA does not expressly preclude district court review and the relevant factors indicate that Congress did not intend to preclude it, either.  Agencies have expertise in areas requiring specialized technical or scientific knowledge.  FERC admits it lacks expertise or even jurisdiction to adjudicate the facial constitutional challenge presented here.

Eventual judicial review before a court capable of deciding the issue is not meaningful because it would require landowners to literally "surrender the farm" to the taking while they wait to reach the court of appeals.  It defies logic that Congress would require challengers to the NGA to pursue a futile appeal before the very agency whose authority they challenge while their land is irreparably transformed in order to reach a court with power to grant the relief they seek.  The district court retains jurisdiction to decide the issue presented here and this Court should remand this case to the district court to decide it.

## STANDARD OF REVIEW

The appellate court reviews *de novo* the district court's grant of a motion to dismiss for lack of subject matter jurisdiction. Piersall v. Winter, 435 F.3d 319, 321 (D.C. Cir. 2006).

6

## ARGUMENT

### I.     The district court erred when it dismissed the case for lack of subject matter jurisdiction

Generally, federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The question, then, is not whether Congress has specifically conferred jurisdiction to the district court, but whether it has taken it away. Whitman v. Department of Transportation, 547 U.S. 512, 514 (2006) (per curiam). The act of removing or taking jurisdiction away from a district court is called "preclusion." Preclusion occurs when Congress creates a statutory framework that channels review to an administrative agency or appellate court. Preclusion can be either express or implied. Express preclusion occurs when the actual words of the statute expressly strip the district court of jurisdiction that other statutes confer. If, however, there is no express preclusion clause, the courts must assess several factors to determine whether Congress *impliedly* intended to remove the claim from the ordinary jurisdiction of the federal courts. "Provisions for agency review do not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" Free Enterprise Fund v. Public Co. Accounting Oversight Bd., 561 U.S. 477, 489 (2010) (internal citation omitted) (emphasis added). The statute's "language, structure, and purpose, its legislative

history, and whether the claims can be afforded meaningful review" are all relevant when determining whether Congress intended to strip the district court of jurisdiction. NAACP v. USPS, 2020 WL 5995032*8 (D.D.C. October 10, 2020) (quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207 (1994)) (internal citation omitted).

As an initial matter, there is no express preclusion clause in the NGA barring jurisdiction conferred by 28 U.S.C. § 1331. The statutory review scheme of section 717r(b) merely channels review of agency "orders" arising under the statute to the court of appeals. Express preclusion, however, requires express language stating that § 1331 jurisdiction is stripped. *See, e.g*., Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 10 (2000) (explaining that express preclusion requires plain language explicitly prohibiting § 1331 jurisdiction such as: "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331[.]"); *see also* Johnson v. Robison, 415 U.S. 361, 367-68 (1974) (holding that a statutory framework channeling review of agency decisions arising under the statute does not constitute express preclusion of § 1331). No such explicit language appears in the NGA. Because the NGA lacks an express preclusion clause, the district court retains jurisdiction unless preclusion is implied. It is not.

## A. The Commission has neither the expertise nor jurisdiction to adjudicate this issue

If the agency's expertise can be "brought to bear on particular problems," then the agency review scheme displays a "fairly discernible intent" to limit jurisdiction and is deemed to be "exclusive." Free Enterprise, 561 U.S. at 490 (quoting Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 379 U.S. 411, 420 (1965)). But if the legal question falls outside of the agency's expertise, preclusion is not presumed because the question presented is not the type of question that Congress intended to funnel to the agency.

### 1. Agencies have special expertise in fact-based, scientific, and technical inquiries arising under the statute

The purpose of channeling review to an administrative agency is to obtain the benefit of the agency's special knowledge and expertise in a particular subject matter. Agencies are typically charged with having expertise in specific fact-based, scientific, and technical inquiries. Johnson v. Robison, 415 U.S. 361, 367-68 (1974) ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.") (quoting Udall v. Tallman, 380 U.S. 1, 16 (1965)). Because Article III courts are deemed to be at a disadvantage in answering "technical considerations of [agency] policy," Congress empowers specialized agencies to answer issues of statutory construction that require highly "technical" or "fact-bound

inquiries." <u>Free Enterprise</u>, 561 U.S. at 491. This improves efficiency and conserves judicial resources. Thus, when the question falls *within* the agency's expertise, preclusion is presumed because the agency has "a comparative advantage over the courts in resolving the claim." <u>Elgin v. Dept. of Treasury, 567 U.S. 1, 26 (2012)</u> (Alito, J., dissenting); <u>Cirko on behalf of Cirko v. Commissioner of Social Security</u>, 948 F.3d 148, 153 (3d Cir. 2020) (explaining that agency review is generally appropriate for claims involving "exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise.") (citing <u>McCarthy v. Madigan</u>, 503 U.S. 140, 146 (1992)). But if the question lies *outside* of the agency's expertise, preclusion is disfavored because the agency has neither knowledge nor authority to speak to the issue. In such cases, implied congressional intent to preclude district court review is lacking because the issue is "wholly collateral" to the type of challenge Congress intended to channel to the agency.

2. **Agencies lack expertise and authority to adjudicate the constitutionality of the statutes they administer**

Agencies are not charged with either expertise or authority to adjudicate facial constitutional challenges to the laws they administer.  It is well-settled that **"[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies."** <u>Johnson</u>, 415 U.S. at 367-68 (holding that "[t]he questions of law presented in these

proceedings **arise under the Constitution, not under the statute whose validity is challenged.**") (emphasis added); <u>Public Utilities Commission of State of Cal. v. U.S.</u>, 355 U.S. 534, 539 (1958) ("[W]here the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the <u>only</u> effective way of protecting the asserted constitutional right.") (emphasis added); <u>Free Enterprise</u>, 561 U.S. at 491 (concluding that **"constitutional claims are also outside the Commission's competence and expertise"**); <u>Cirko</u>, 948 F.3d at 153 ("[E]xhaustion is generally inappropriate where a claim serves to vindicate structural constitutional claims like Appointments Clause challenges, which implicate both **individual constitutional rights and the structural imperative of separation of powers."**) (emphasis added).

Case law confirms this distinction. Where the question is a matter of *statutory* construction, i.e., where the issue arises "under the statute," preclusion *is* appropriate—and review is meaningful—because the agency has the special technical knowledge or fact-finding ability needed to adjudicate the issue. In <u>United States v. Ruzicka</u>, 329 U.S. 287 (1946), agency review was meaningful because the question presented required "fact-bound inquiries" that called for the agency's specialized knowledge of the milk industry. *See* <u>Free Enterprise</u>, 561 U.S. at 491. Because Article III courts lack technical or factual expertise in the milk industry,

they would be at a disadvantage in answering the question. Preclusion was, therefore, appropriate because the agency was the most qualified to address the issue.

In Thunder Basin, the petitioner was seeking review of *statutory* claims that arose under the Mine Act. The claims required the agency's expertise in interpreting the rights and duties arising *under the statute* it administered. As the Court noted, the primary issue in Thunder Basin required interpretation of statutory rights arising under the Mine Act and therefore required the agency's input and expertise:

> Petitioner's statutory claims at root require interpretation of the parties' **rights and duties under § 813(f)** and 30 CFR pt. 40, and as such **arise under the Mine Act** and **fall squarely within the Commission's expertise.**

Thunder Basin, 510 U.S. at 214 (emphasis added). Since the Commission was established to administer rights and duties under the Mine Act and had "extensive experience interpreting the walk-around rights" at issue, exclusive review before the agency was appropriate because "agency expertise [could] be brought to bear on the statutory questions presented." Id. at 215 (internal citation omitted). Not only did the agency in Thunder Basin have jurisdiction to speak to the issue presented; it also had the specific expertise needed to decide the issue. In fact, it was the agency's job to administer rights and duties that arose under the Mine Act. Because the issue plainly arose under the Mine Act, the agency could not only speak to the issue, but could do so in a meaningful way.

12

Likewise, in <u>Elgin</u>, the agency's expertise in statutory construction and case-specific, fact-finding ability was a driving force behind the Court's finding of preclusion. The Court held that the agency's ability to establish a "factual record" was necessary and helpful in adjudicating the case-specific personnel action at issue. "[T]he CSRA review scheme fully accommodates an employee's potential need to establish facts relevant to his constitutional challenge to a federal statute." <u>Elgin</u>, 567 U.S. at 19. The petitioners' challenge to removal, even if formulated in constitutional terms, was case-specific and required fact-finding. It was therefore "precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." <u>Id.</u> at 22. Again, the agency in <u>Elgin</u> not only had jurisdiction to speak to the issue, but also had the ability to find facts needed to adjudicate the employment matter and ultimately grant the kind of relief routinely sought in that type of personnel action, i.e., reinstatement and back-pay.

But where—as here—the agency cannot cure the constitutional defect, and instead expressly disclaims jurisdiction because the question lies outside of its knowledge and expertise, courts have consistently held that the district court retains jurisdiction. Simply put, if the agency has no expertise and admits that it literally cannot speak to the issue, Congress could not have intended to channel review to the agency because such review would be meaningless. Finding preclusion in such cases would require the Court to conclude that Congress impliedly intended to send

petitioners through a futile, meaningless process of procedural hoops in order to one day "win access," as the Court in <u>Free Enterprise</u> noted, to *eventual* judicial review. <u>Johnson</u>, 415 U.S. at 367-68 (preclusion not appropriate because questions "arise under the Constitution, not under the statute whose validity is challenged," and explaining that "The Board of Veterans' Appeals expressly disclaimed authority to decide constitutional questions"); <u>Public Utilities</u>, 355 U.S. at 540 (noting that agencies have expertise in prices and shipment rates but not constitutional issues that "the Commission can hardly be expected to entertain."); <u>Free Enterprise</u>, 561 U.S. at 490 ("But petitioners object to the Board's existence, not to any of its auditing standards."); <u>Bowen v. Michigan Academy of Family Physicians</u>, 476 U.S. 667, 670 (1986) (upholding collateral attack on the regulation itself, emphasizing critical difference between individual "amount determination" and a challenge to the procedures for making such determinations); <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976) (holding that statute requiring exhaustion of administrative remedies may be challenged in district court because due process challenge arose under the Constitution, not under the statute).

The Third Circuit in <u>Cirko</u> recently affirmed this basic principle in the context of an Appointments Clause challenge. The Circuit Court held that deference to agency expertise in constitutional challenges was "rendered irrelevant" on account of the "well-worn maxim" that constitutional questions, such as Appointments

Clause challenges, are "outside the [agency's] competence and expertise." <u>Cirko</u>, 948 F.3d at 158 (internal citation omitted). Because the challenge arose under the Appointments Clause, there was "no legitimate basis" for the Commissioner to argue that agency expertise was required to answer the legal question. <u>Id</u>. Nor could the agency in <u>Cirko</u> correct the constitutional error because the administrative judges could not "cure the constitutionality of their own appointments." <u>Id</u>. at 158. There, as here, the agency's legitimacy was being challenged under the Constitution. And since agencies cannot determine—or cure—the unconstitutionality of their own power, administrative exhaustion could not have been impliedly intended and was not appropriate.

Likewise, as this Court explained in <u>NO Gas Pipeline v. FERC,</u> 756 F.3d 764 (D.C. Cir. 2014) and <u>Delaware Riverkeeper Network v. FERC</u>, 895 F.3d 102 (D.C. Cir. 2018), appellate jurisdiction under § 717r(b) is limited to reviewing matters <u>within</u> the agency's expertise and jurisdiction. If FERC lacks jurisdiction, the matter must be initiated in district court and only then appealed to the Circuit Court. <u>NO Gas Pipeline</u>, 756 F.3d at 769 ("[T]he NGA gives us jurisdiction to review orders in proceedings under that Act, not claims unanchored in pipeline proceedings but arising under the Budget Act. We have no jurisdiction."). Just as those claims arose *under the Budget Act*, so too do the claims here arise *under the Constitution*. Neither

of those challenges arises *under the NGA*. The Commission knows this, which is why it disclaimed jurisdiction.

### 3. FERC admits it has no expertise to decide an issue arising under the Constitution and has expressly disclaimed jurisdiction

Here, FERC has admitted it lacks expertise and jurisdiction to adjudicate—or speak to—the constitutional issues presented. Like the Board in Johnson, FERC has also expressly disclaimed authority to decide the constitutional questions presented. JA 172 (citing 161 FERC ¶ 61,043 (2017) (Certificate Order) at JA 210) ("[S]uch a question is beyond our jurisdiction: only the Courts can determine whether Congress' action in passing section 7(h) of the NGA conflicts with the Constitution."). FERC admits it cannot decide the legitimacy of its own power, nor could it "cure" the facial constitutional defects alleged. Like the administrative judges in Cirko who could not "cure the constitutionality of their own appointments," neither could FERC cure the constitutionality of its own illegitimate power. If, for example, Congress's delegation of power to FERC via the NGA *is* ultimately deemed overly broad and facially unconstitutional, as appellants' Complaint alleges, then FERC cannot "cure" that problem by simply moving the pipeline, as the district court erroneously suggested. Moving the pipeline would affect the appellants' standing but it would not cure the fact that the law is unconstitutional on its face. The fact that appellants have a "personal stake" in the outcome is what gives them standing to raise the facial challenge in the first place;

it does not change the facial nature of the claim. <u>O.A. v. Trump</u>, 404 F.Supp.3d 109, 141 (D.D.C. Aug. 2, 2019) (holding that the district court retained jurisdiction based on existence of federal question over facial challenge because the action challenged the validity of the rule's promulgation rather than any individual proceeding). The Court in <u>Trump</u> explained that a personal stake in the outcome of the facial challenge does not diminish district court jurisdiction because "[f]ederal courts are without authority to decide disputes unless the plaintiff has standing—that is, "'a personal stake in the outcome of the controversy [sufficient] to warrant his invocation of federal-court jurisdiction.'" <u>Id</u>. (internal citation omitted); <u>Public Utilities</u>, 355 U.S. at 540 ("In the present case, the challenge is not to a rate 'order' but to a statute[.]"). To put this another way: the relief appellants seek cannot be granted by the agency. If FERC moved the pipeline to someone else's property, the problem would still exist because the law would still be unconstitutional. Appellants have lodged a facial constitutional attack on the NGA, which means the problem exists under *all* circumstances, under *all* facts, at *all* times.

Assuming appellants are correct on the merits, there is no set of facts—and no possible pipeline route—under which Congress's delegation of power to FERC and/or a private entity would be constitutional. If the NGA is facially unconstitutional under the federal separation of powers doctrine, the only way to cure that problem is for Congress to change the law or for the Court to invalidate it

(or sever the unconstitutional provisions). FERC does not have the power to do either of those things, which means there is no opportunity for error-correction. Because the separation of powers issues here are wholly collateral to the NGA in that they "arise under the Constitution, not under the statute whose validity is being challenged," <u>Johnson</u>, 415 U.S. at 367-68, FERC has neither the expertise nor the authority to adjudicate the facial constitutional challenge to the law it administers. Not only would the district court be "at no disadvantage in answering" the constitutional question as to the legitimacy of FERC's existence and power, <u>Free Enterprise</u>, 561 U.S. at 491, but the district court would be the *best* adjudicator of such questions given its expertise in constitutional jurisprudence.

What appellees are actually getting at—and what the district court erroneously adopts—is that it does not matter that FERC lacks jurisdiction and expertise to decide appellants' claims because they could *eventually* get judicial review in the appellate court. But eventual judicial review is not meaningful.

### B. Meaningful means effectual, not *eventual* judicial review.

Given that FERC has acknowledged it lacks expertise and jurisdiction to decide appellants' claims, the next step in the jurisdictional inquiry is to decide whether *eventual* judicial review in an appellate court would still be meaningful. Did Congress desire to strip the district court of jurisdiction and send this type of question to the agency even though agency review would be entirely meaningless?

The two important considerations are: (1) timing, and (2) irreparable harm caused by delayed judicial review in an appellate court.

## 1. The timing of judicial review matters because "eventual" relief is not sufficient as a matter of law

Meaningful means *effectual,* not eventual judicial review. *See, e.g.,* NAACP v. USPS, 2020 WL 5995032 (D.D.C. October 10, 2020) (finding against preclusion and explaining that it *does* matter that the agency [PRC] "cannot provide immediate relief" because delay caused Plaintiffs harm). In NAACP, the Court reasoned that "requiring Plaintiff to go through the PRC process would deny it meaningful review" *even if* there was a "fairly discernible" intent in the statutory scheme to preclude district court jurisdiction. Id. When the agency review process unnecessarily delays judicial review while allowing the challenged action to continue to inflict harm, that review is not meaningful.

As this Court recently explained in the precise context of the NGA, delayed judicial review has "real-world consequences" for aggrieved parties—especially landowners. In Allegheny Defense Project v. Federal Energy Regulatory Commission, 964 F.3d 1 (D.C. Cir. 2020), this Court explained that FERC routinely uses tolling orders to prevent aggrieved landowners from obtaining timely judicial review of the *Commission's* decisions in the court of appeals. 964 F.3d at 10. In Allegheny, FERC used tolling orders to "give itself roughly **ten times as long** as the statute allots for it to act." Id. The Court cited numerous other instances in which

19

FERC engaged in this commonplace practice of delaying judicial review while simultaneously "greenlighting construction" and even "operation of the pipeline." Id. at 11 (citing Delaware Riverkeeper Network v. FERC, 753 F.3d 1304, 1307–1309, 1312 (D.C. Cir. 2014) (Commission authorized tree clearing and compressor station construction while tolling rehearing applications and a stay motion for **six and a half months**, with the result that the pipeline was completed by the time this court held that the Commission order violated NEPA); Columbia Gas Transmission, LLC, 170 FERC ¶ 61,246, at ¶¶ 1–2 (2020) (Commission tolled environmental groups' rehearing application for **more than two years**, while allowing a 170-mile pipeline to be completely built and put into service more than a year before the Commission ruled on the merits)) (emphasis added).

Notably, unlike the petitioners in Allegheny, appellants here are not challenging a *Commission* decision but rather a *Congressional* decision to create and empower FERC in the first place. Nevertheless, the Allegheny holding is relevant insofar as it shows that the *timing* of judicial review matters. "Eventual" review is not sufficient as a matter of law. It mattered in Allegheny that the Commission's tolling orders were delaying judicial review of Commission decisions in the appellate court. It mattered in NAACP that the agency could not address the issue or provide immediate relief. It matters here that a finding of implied preclusion would delay judicial review by forcing landowners to present a facial constitutional

20

challenge that arises under the Constitution to a powerless agency that admits it has

neither the expertise nor the authority to address it. The "real-world consequence"

for landowners is a theatre of the absurd: an entirely meaningless agency review

process that does nothing but delay landowners' ability to have their day in court

while pipeline construction proceeds full-steam ahead. The landowners, in other

words, would have to avail themselves of a futile hearing and rehearing in order to

eventually "win access," as the <u>Free Enterprise</u> Court put it, to the court of appeals.

The appellate court would only then decide the merits of a facial challenge to a

Congressional act, for the first time, de novo (since the agency, utterly lacking in

jurisdiction, could not even speak to the issue, let alone "cure" it). To conclude that

Congress implicitly intended preclusion is to conclude that Congress wanted to

waste everyone's time—the agency's and the parties' alike—by sending appellants

through a needlessly complex, inefficient, and futile agency review process.

### 2. Eventual judicial review is not meaningful because it would require landowners to "surrender the farm to the taking"—not merely to bet it— and would therefore result in irreparable harm

Appellees are right; the statutory review scheme does not present a "bet the

farm" conundrum. It presents a "surrender the farm" conundrum. A finding of

implicit preclusion would literally force the landowners to *surrender their farm to*

*the taking*—to watch the bulldozers enter their property and the pipes go into the

ground whilst they wait on the sidelines for a meaningless agency review process to

conclude. This is far worse than a mere "bet the farm" scenario. In a "bet the farm" context, the court asks whether a finding of preclusion would be so harsh as to force the petitioners to incur too great a risk—usually a financial one—before eventually winning access to a court. In <u>Free Enterprise</u>, for example, the Court rejected preclusion because the exclusive review scheme advanced by the Government would force petitioners to first "incur a sanction (such as a sizable fine)" before reaching the court of appeals. <u>Free Enterprise</u>, 561 U.S. at 490 ("If the Commission then affirms, the firm will win access to a court of appeals—and severe punishment should its challenge fail."). The Court found this financial risk too great a harm to impose and thus held that the exclusive review scheme was not meaningful. <u>Id</u>. ("We normally do not require plaintiffs to "bet the farm ... by taking the violative action" before "testing the validity of the law.").

A "bet the farm" scenario is about risk, i.e., the *possibility* that some financial harm such as a sizable fine *might* occur. Is the petitioner being forced to 'bet the farm' by incurring the risk of some type of severe financial penalty or sanction in order to eventually "win access" to a court of law that could adjudicate the validity of its challenge? If the answer is yes, preclusion is not appropriate because the *risk* is too great; i.e., the farm might be gambled away.

A "surrender the farm" scenario—which is what we have here—does not present a mere <u>risk</u> of harm but the <u>certainty</u> of it. A surrender the farm scenario is

22

not a situation where a harm may or may not happen, i.e., a sizable fine that may or may not be incurred. It is, rather, a much more dire situation whereby harm is all but guaranteed to occur while landowners are waiting to reach the court of appeals. And the harm in such cases is not merely financial risk, but irreparable harm to the land. *See, e.g.,* Levisa Coal Co. v. Consolidation Coal Co., 276 Va. 44, 54 (2008) (reasoning that even if trespass to land is in itself "trivial, or the damage is trifling, nominal or insubstantial," courts must protect real property rights because injury to land is "deemed irreparable and the owner protected in the enjoyment of his property whether such be sentimental or pecuniary.").

    As this Court recently noted, the damage incurred by pipeline construction is an "irreparable harm" imposed upon aggrieved landowners:

> The problem is well known to the Commission itself. Commissioner Glick has called the process enabled by the Commission's tolling orders "fundamentally unfair," at least when it "allows a pipeline developer to build its entire project while simultaneously **preventing opponents of that pipeline from having their day in court[,]** ensur[ing] that **irreparable harm** will occur before any party has access to judicial relief."

Allegheny, 964 F.3d at 10-11 (emphasis added) (in the context of judicial delays caused by tolling orders) (quoting Spire STL Pipeline LLC, 169 FERC ¶ 61,134, 2019 WL 6242969, at *29–30 (2019) (Glick, Comm'r, dissenting)).

    Given that financial risk is too great a harm to impose preclusion, the certainty of irreparable injury to the land while petitioners await futile rehearing with the

agency is even greater reason to reject preclusion. McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 497 (1991) (holding that preclusion did not apply because "restricting judicial review to the courts of appeals as a component of the review of an individual deportation order is the practical equivalent of a total denial of judicial review of generic constitutional and statutory claims."); NAACP v. USPS, 2020 WL 5995032 (D.D.C. October 10, 2020) (holding that agency review scheme would deny meaningful review because the PRC could not provide immediate relief and the timing of changes caused plaintiffs harm). As in McNary, where the petitioners could reach the court of appeals only if they "voluntarily surrendered" themselves to deportation—an irreparable harm too great to impose—so too would landowners here reach the court of appeals only if they first voluntarily surrendered their land to the taking. Such an inference would require the Court to conclude that Congress implicitly intended to allow irreparable transformation of the land before the validity of the statute enabling the taking can be adjudicated on the merits. It defies logic to conclude that this is what Congress intended.

## C. Legislative History

The legislative history of the NGA confirms that its "primary purpose" was "to provide Federal regulation, in those cases where the State commissions lack[ed] authority, under the interstate-commerce law." H.R.Rep.No.6721, 75th Cong., 1st Sess. (Rep. Lea, the NGA's House sponsor). Following Peoples Natural Gas Co. v.

<u>Public Service Com</u>., 270 U.S. 550, 552 (1926), states were prevented from regulating natural gas that flowed across state lines.  This left a significant regulatory vacuum, resulting in massive rate disparities.  *See, e.g.,* H.R.Rep.No.6725, 75th Cong., 1st Sess. (Rep. Crosser discussing how the same gas was sold in West Virginia for .35 per thousand cubic feet and $1.00 across the border in Lexington, Virginia.)  The NGA filled that vacuum.

The NGA passed without opposition and contained "the usual provisions" found "in all regulatory measures enacted by the Congress." <u>Id</u>. at 6722, 6726. These included "provisions for complaints, ... hearings, ... production of testimony and rehearings by the Commission on petition," and "court review of the orders of the Commission ...." <u>Id</u>. at 6722.  It did ***not*** include Commission review of constitutional challenges to the NGA itself.  The focus of this "carefully considered" bill was "to fix just and reasonable rates for the transportation of [natural gas] and just and reasonable prices for the sale of the gas." <u>Id</u>. at 6726.  Nothing about the legislative history of the NGA suggests that Congress intended a petitioner to ask the Commission to conduct a futile review of a challenge to the constitutionality of the NGA—and seek rehearing of that futile proceeding—before reaching an Article III court with jurisdiction to provide the relief sought.

## CONCLUSION

This Court should reverse the district court's decision to dismiss the case for lack of subject matter jurisdiction and remand for a hearing on the merits.

Respectfully submitted

*/s/ John R. Thomas, Jr.*

John R. Thomas, Jr. (D.C. Bar No. 1027981)
   *Counsel of Record*
Mia Yugo *(Admission Pending)*
HAFEMANN MAGEE & THOMAS, LLC
11 Franklin Road SE, Suite 200
Roanoke, VA 24011
(540) 759-1660
Email: jt@fed-lit.com

*Counsel for Plaintiffs-Appellants*

November 30, 2020

## <u>CERTIFICATE OF COMPLIANCE</u>

I, counsel for Plaintiffs-Appellants and a member of the Bar of this Court, certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) that the foregoing Brief is proportionately spaced, has a typeface of 14 points or more, and contains 5,925 words.

Respectfully submitted

*/s/ John R. Thomas, Jr.*

John R. Thomas, Jr. (D.C. Bar No. 1027981)
   *Counsel of Record*
Mia Yugo *(Admission Pending)*
HAFEMANN MAGEE & THOMAS, LLC
11 Franklin Road SE, Suite 200
Roanoke, VA 24011
(540) 759-1660
Email: jt@fed-lit.com

*Counsel for Plaintiffs-Appellants*

Date:  November 30, 2020

## <u>CERTIFICATE OF SERVICE</u>

I, counsel for Plaintiffs-Appellants and a member of the Bar of this Court, certify that on November 30, 2020, I caused a copy of the foregoing Brief of Appellants to be filed with the Clerk through the Court's CM/ECF system. I further certify that the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

Respectfully submitted

*/s/ John R. Thomas, Jr.*

John R. Thomas, Jr. (D.C. Bar No. 1027981)
   *Counsel of Record*
Mia Yugo *(Admission Pending)*
HAFEMANN MAGEE & THOMAS, LLC
11 Franklin Road SE, Suite 200
Roanoke, VA 24011
(540) 759-1660
Email: jt@fed-lit.com

*Counsel for Plaintiffs-Appellants*

Date: November 30, 2020

# ADDENDUM

# STATUTORY ADDENDUM

## Excerpts of Articles I, II, and III of the U.S. Constitution

U.S.C.A. Const. Art. I § 1

Section 1. Legislative Power Vested in Congress

All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives

U.S.C.A. Const. Art. II § 1, cl. 1

Section 1, Clause 1. Executive Power, Term

Section 1. The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years, and, together with the Vice President, chosen for the same Term, be elected, as follows:

U.S.C.A. Const. Art. III § 1

Section 1. Judicial Power, Tenure and Compensation

Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

## Excerpts of the Natural Gas Act, 15 U.S.C. § 717r. Rehearing and review

(a) Application for rehearing; time

Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to

abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

(b) Review of Commission order

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be transmitted by the clerk of the court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings, which is supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the

Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28.

(c) Stay of Commission order

The filing of an application for rehearing under subsection (a) shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

(d) Judicial review

(1) In general

The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval (hereinafter collectively referred to as "permit") required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.).